JOSEPH v. THE CONTINENTAL JERSEY WORKS.

Although upon the hearing of a *certiorari* from the verdict of a jury in a justice's court, the judge of the superior court may have been satisfied the verdict was contrary to evidence and should be set aside, and although a precisely similar verdict in the same case on a former *certiorari* had been set aside on this ground, yet as there were issues of fact involved, the court erred in rendering a final judgment for more than was found by the verdict. In remanding the case, the judge should point out the deficiency in the evidence, and instruct that, unless that be supplied on the next trial, the verdict should be thus and so.    *Judgment reversed.*
July 24, 1893.

Complaint on account. Before Judge GAMBLE. Baldwin superior court. July term, 1892.

D. & B. Wolf, traders under the name of the Continental Jersey Works, sued Joseph for $41.16 balance on

account. The defendant claimed that this amount was the sum of two credits to which he was entitled on the original account for goods he bought of the plaintiffs, one of these credits being a discount of $11.16, and the other being the price of three cloaks which he shipped back to the plaintiffs by express. The case was tried twice in the justice's court, and on both trials the jury found against the defendant as to his claim of discount, but found in his favor as to the other credit claimed. From both verdicts the case went to the superior court by *certiorari* sued out by the plaintiffs; and at the last hearing the court not only sustained the *certiorari*, but rendered judgment in favor of the plaintiffs for $41.16, besides interest and costs. The defendant excepted, alleging that the only lawful judgment would have been to sustain the *certiorari* and remand the case to the justice court for a new trial, there being an issue of fact and not an issue of law only; and further, that the judgment is contrary to the evidence. The evidence, so far as material, is as follows :

One Franckel testified for plaintiffs: The three cloaks in question were never received from defendant by express or any other way. The plaintiffs never authorized their return by defendant, nor did any one for them, directly or indirectly, with their knowledge, authority or consent. My information I acquired as book-keeper of plaintiffs, and as being generally and fully acquainted with their business. All goods shipped by them while I was in their employ came directly under my notice, so that I am familiar with this matter from actual observation. If the three cloaks had been returned and received by the plaintiffs I would have known it, because I would have seen them in the line of my employment, and I did not.—The account sued on was dated at Philadelphia, September 17, 1887. In evidence were four letters from the defendant, dated November 9th and

21st, and December 8th and 15th, 1887, the first three addressed to the plaintiffs and the fourth to Emiling Wolf. The first says: "I shall return to you the fur-lined circulars at $10, which I want you to be kind enough to credit to my account. I will make it up by liberal bills in future," etc. The second says: "I am compelled to ask, in view of the unsatisfactory condition of my trade, to take back the fur-lined garments. I have prepaid the charges, and promise you to make it up liberally in the future. I would not ask this under ordinary circumstances, but it is just so; and one good turn deserves another. Just help me out in this small matter, and I assure you it will not result to your injury." The third states: "I have advice of draft which I decline to pay. I am perfectly willing to pay you less the circulars returned. . . The cloaks are not salable here. I took them from some salesman in New York, reluctantly, stating I did not think I could sell them; that I would try. The cloaks have been returned to you, and are not in my possession. Mr. Rosenthal will certainly bear me out in this matter." The fourth letter says: "I am in receipt of your very unkind letter of 12th. I positively decline to accede to your demand, and I will defend my position no matter what the cost may be. You are therefore invited to proceed at law in this matter. The goods were returned to you by express to your N. Y. office, and letter of advice was mailed at same time to same office." The defendant testified, that he did not know plaintiffs nor where their business place was in Philadelphia, but dealt with Rosenthal, their New York salesman. Rosenthal insisted upon his taking the three fur-lined cloaks, which he did reluctantly to try the market, as they were too heavy for this southern market. Failing to sell them, he shipped them back by express on November 27, 1887, without orders to do so, to New York, and knows not whether they

were received by plaintiffs. The agent of the express company testified, that on November 27, 1887, the defendant brought him a box said to contain the cloaks, which he expressed to plaintiffs at New York. Hearing that they had not been received by plaintiffs, he sent a tracer after them, received it back and had it at the former trial of this case, and filed it with papers in the express office. He made partial search there for it lately and did not find it; knows not where it is. The presiding justice and plaintiff's attorney each stated that they did not remember ever to have seen the tracer named, and knew not where it was. It was not among the papers since the last case had been before the justice.

Whitfield & Allen, for plaintiff in error.

C. P. Crawford, contra.